IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| DONALD K. ALEXANDER, GARY LEE PATTERSON, GEORGE DALTON, and SUSIE BOWEN, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:12-cv-4104-NKL |
| v. | ) ) ) | |
| MEDTRONIC, INC. and CH ALLIED SERVICES, INC. (DBA BOONE HOSPITAL CENTER), | ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

Plaintiff Donald Alexander, and others, claims that Defendant Medtronic, and others, negligently implanted him with a defective defribillator lead, and that Medtronic engaged in bribery, illegal false statements, and illegal kickbacks in doing so. Pending before the Court are Alexander's Motion to dismiss for lack of subject matter jurisdiction [Doc. # 14], Medtronic's motion to stay all proceedings [Doc. # 9], Defendant CH Allied Services's motion to join that motion [Doc. # 10], Medtronic's motion to extend or stay deadlines [Doc. # 20], and Defendant CH Allied Services' motion to join that motion [Doc. # 22]. For the following reasons, the Court denies Alexander's motion to dismiss and grants Medtronic's motion to stay the case pending the outcome of an appeal before the Eighth Circuit between these same parties.

**I.      Factual Background**

Prior to filing this lawsuit, Alexander filed three separate lawsuits against Medtronic, all arising from Medtronic's role in implanting an allegedly defective defibrillator lead in Alexander. Alexander's third such case was originally filed in this Court, and alleged damages under civil RICO, intentional medical negligence, false advertising and consumer fraud, vicarious liability, and conspiracy. Case no. 10-4081-NKL Doc. # 1 at 1. All three of these claims ended up in the District of Minnesota and all three were dismissed as barred by a settlement agreement between Alexander and Medtronic. For two of those cases, Alexander filed motions to reconsider in the District of Minnesota and for one of those cases, Alexander filed a motion for reconsideration in this Court. All three of these motions were denied. Alexander has appealed these denials, and his appeals have been consolidated in the Eighth Circuit.

Alexander then filed the current lawsuit against Medtronic in Missouri state court, arguing that Medtronic's role in implanting an allegedly defective defibrillator entitled Alexander to damages for criminal conspiracy, bribery, fraud, and gross medical negligence. Medtronic removed the action to this Court. Alexander claims the lawsuit was improperly removed, and asks the Court to remand to state court.[1] Medtronic argues that, in the interest of judicial efficiency, this lawsuit should be stayed pending the result of the Eighth Circuit appeal of the previous cases between Alexander and Medtronic.

---

[1]Alexander's motion does not explicitly ask for remand to state court, but is rather captioned as a motion to dismiss. It appears from Alexander's briefing, however, that Alexander wishes for the case to continue, but views removal to federal court as improper in this case. The Court thus treats this motion as a motion for remand to state court.

2

## II. Analysis

### A. Effect of Unsigned Filings

Medtronic points out that all four Plaintiffs are non-lawyers proceeding pro se and that only Plaintiff Alexander has signed the Petition and subsequent documents. Medtronic appears to argue that the Court should thus strike the pleadings. Federal Rule of Civil Procedure 11(a) provides: "Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented" and that "[t]he court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." Because Alexander has signed the filings in this case on his own behalf, he has satisfied the requirements of Rule 11(a) as to himself.

But as for the remaining three Plaintiffs, Alexander is not their attorney and he cannot sign on their behalf. 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1333 at 513 (3d ed. 2004). Without the signature of these parties on any document on file, Rule 11 has not fulfilled its purpose of "mak[ing] certain that the persons who are named as parties are actually in assent to the filing of an action on their behalf." *Scarrella v. Midwest Fed. Sav. and Loan*, 536 F.2d 1207, 1209 (8th Cir. 1976). The text of Rule 11 suggests that all filings not signed by these three Plaintiffs must be stricken as to these Plaintiffs, as these Plaintiffs have long been on notice that they were required to sign their filings and have not promptly corrected this error. *See* [Doc. # 1 at 1]. But "in the absence of prejudice, the district court can treat the defect as technical and should grant leave

3

to correct a failure to sign." 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1333 at 520-21 (3d ed. 2004); *see also Kovilic Constr. Co. v. Missbrenner*, 106 F.3d 768, 772 (7th Cir. 1997). Here Defendants have not claimed prejudice and the three unsigned Plaintiffs have not asked for leave to sign their filings. The Courts grants these three Plaintiffs twenty-one days to submit signed copies of any filings they wish to join; after that time, any Plaintiff who has not signed a document will be considered stricken from that document.

### B. Whether Subject Matter Exists

Alexander claims the Court cannot grant Medtronic's motion to stay because Medtronic improperly removed this case to federal court and the Court therefore lacks subject matter jurisdiction. Medtronic asks the Court to stay this determination until after the Eighth Circuit decides a related appeal, claiming that the appeal could guide the Court's determination of whether it has subject matter jurisdiction. Medtronic's suggestion may well promote judicial efficiency, which is a valid concern. But ensuring that the Court has subject matter jurisdiction over the parties before it is a more important concern, as evidenced by the requirement that the Court dismiss an action if at any time during the litigation the Court determines it lacks subject matter jurisdiction. *See* FED. R. CIV. P. 12(h)(3). Otherwise, the Court risks upsetting the balance of federalism that the Court's jurisdictional rules were designed to protect. Thus, the Court will not enter an order staying litigation between these parties until the Court has determined that it has jurisdiction over these parties.

4

Medtronic argues that the Court has jurisdiction over Alexander's claims because those claims arise under federal law. 28 U.S.C. § 1331. Courts "will normally consider a claim to have arisen under federal law if a federal cause of action appears on the face [of] a well-pleaded complaint." *Oglala Sioux Tribe v. C & W Enters., Inc.*, 487 F.3d 1129, 1131 (8th Cir. 2007). "If even one claim in the complaint involves a substantial federal question, the entire matter may be removed." *Pet Quarters, Inc. v. Depository Trust and Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009). The title of Alexander's Petition in state court was "Petition for damages pursuant to criminal conspiracy, bribery, fraud and gross medical negligence." [Doc. # 1-1 at 2]. But the remainder of that Petition never cited to any law, specifically referred to any statute or judicial doctrine, and never set out the elements of any cause of action.

Medtronic interprets Alexander's Petition to pursue a private right of action under the federal Anti-Kickback Statute and the federal False Claims Act. The Anti-Kickback statute makes it a crime to be involved in payment for referring an individual for medical items or services that could be paid for by a federal health care program. 42 U.S.C. § 1320a-7b(b). Any claim violating the Anti-Kickback Statute might also be an illegal knowingly false claim for payment or approval under the False Claims Act. 31 U.S.C. § 3729 *et seq.* Consistent with this interpretation, Alexander's Petition quotes at length a press release from the United States Department of Justice that refers to the False Claims Act and states: "The Government accused Medtronic of submitting false claims to Medicare and Medicaid by offering doctors

these kickbacks under the guise of post-market studies and device registries." [Doc. # 1-1 at 3]. Alexander then explains:

> The foregoing...announcement disclosing the criminal bribing of physicians plus the criminal defrauding of...recipients as well as Medicare/Medicaid provided Alexander and other Plaintiffs for the first time with information sufficient to establish standing to sue Medtronic for financial and personal injury damages directly attributable to said criminal bribery and said criminal fraud.

[Doc. # 1-1 at 3]. This passage is the closest Alexander comes to an explanation of the legal basis of his claims, and it appears to refer solely to these two federal statutes. The Court thus agrees with Medtronic that Alexander's claims for criminal conspiracy, bribery, and fraud are all federal causes of action appearing on the face of Alexander's Petition, and that removal was thus proper. The Court thus need not address Medtronic's argument that diversity jurisdiction exists due to fraudulent joinder.

Alexander argues in his briefing that all of his claims are state tort claims under MO. REV. STAT. 537.050 (2000). Alexander appears to believe that this statute provides a private tort claim under Missouri law to the victims of any action that leads to a federal criminal conviction. But Alexander does not cite or even refer to that statute in his Petition. The only reference Alexander's Petition makes to state law is inclusion of the words "gross medical negligence" in the Petition's title. Regardless of whether Alexander views his claims as arising under state law, the claims appear from the face of the Petition to arise under federal law, and removal was thus proper.

6

Further, even if the Court were willing to consider the legal theory expressed in Alexander's briefing in deciding the issue of subject matter jurisdiction, the Court would still find removal proper. Because Alexander's presumed theory provides that his tort claims would all turn on whether Medtronic violated federal law, the Court would have "arising under" jurisdiction under the doctrine expressed in *Grable & Sons Metals Prods., Inc. v. Darue Eng'g & Mfg'g*, 545 U.S. 308, 314 (2005), allowing removal where "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."

For these reasons, the Court has subject matter jurisdiction over Alexander's claims. The Court thus denies Alexander's motion to dismiss for lack of subject matter jurisdiction and will consider Medtronic's motion to stay the litigation.

### C. Motion to Stay

Medtronic asks the Court to stay this litigation pending resolution of a consolidated appeal currently before the Eighth Circuit. "A stay pending the outcome of litigation in another court between the same parties, involving the same or controlling issues is an acceptable means of avoiding unnecessary duplication of judicial machinery." *Texas Indep. Producers and Royalty Owners Ass'n. v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005) (internal quotation omitted). Medtronic argues that this lawsuit has the same facts, parties, and basic legal allegations as the pending Eighth Circuit appeal. One case being considered in that appeal is this Court's Order dismissing claims by Alexander against Medtronic. Case No. 10-

cv-04081-NKL, Doc. # 69.  Medtronic argues that the claims dismissed in that Order are "essentially the same" as the claims raised in this action.  [Doc. # 9 at 4].  Medtronic also argues that if the Eighth Circuit affirms the district court on all issues, that this case will be barred by a prior settlement between the parties.

Alexander argues that the result of the Eighth Circuit appeal will not affect this lawsuit.  Alexander appears to claim that if he is successful on the pending appeal, he will dismiss the civil RICO claims being considered in that appeal and only pursue the claims in this lawsuit.  Alexander appears to admit that if he is unsuccessful on the pending appeal, the Eighth Circuit will have upheld the dismissal of his claims based on a settlement agreement that he entered.  But Alexander argues that this settlement agreement would not affect his claims in this lawsuit because he has refused to accept the money from that settlement agreement and because such settlements do not bar civil actions arising out of subsequent criminal provisions.  Alexander cites no law supporting either argument.

Thus, the parties appear to agree that Alexander and Medtronic previously entered a settlement and that the Eighth Circuit is currently deciding whether that settlement bars some of Alexander's claims arising from the same facts involved in this litigation.  The parties appear to dispute whether that same settlement agreement bars the claims in this lawsuit.  The Eighth Circuit's interpretation of that settlement agreement is thus the "same" as a legal issue in this case, and may well be "controlling."  The Court cannot evaluate Alexander's argument as to whether the settlement agreement bars Alexander's current claims until it construes the agreement, a task in which the Eighth Circuit currently appears to be engaged.

8

The Court will thus stay all matters in this litigation pending resolution of the current Eighth Circuit appeal of previous matters between these parties, Eighth Circuit USCA Case Number 12-1157. Defendant Medtronic's motion to extend or stay deadlines, and Defendant CH Allied Services' motion to join Medtronic's motion, are thus denied as moot.

### III.  Conclusion

For the foregoing reasons, Plaintiff Donald Alexander's Motion to dismiss for lack of subject matter jurisdiction [Doc. # 14] is DENIED. Defendant Medtronic's motion to stay all proceedings [Doc. # 9] and Defendant CH Allied Services's motion to join Medtronic's motion [Doc. # 10] are GRANTED. Defendant Medtronic's motion to extend or stay deadlines [Doc. # 20] and Defendant CH Allied Services' motion to join Medtronic's motion [Doc. # 22] are DENIED as moot. Plaintiffs Gary Lee Patterson, George Dalton, and Susie Bowen have twenty-one days to provide the Court with signed copies of any of the pleadings or motions filed with the Court to which they assent. After twenty-one days, the Court will strike these Plaintiffs from any documents they have not signed.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  June 6, 2012
Jefferson City, Missouri